UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**JEROME E. GUNN**                                                                                          **PLAINTIFF**

**v.**                                                                                  **CIVIL ACTION NO. 5:07CV-P103-R**

**KENTUCKY DEPARTMENT OF CORRECTIONS**                                           **DEFENDANTS**
**SHEILA BURNHAM**

## MEMORANDUM OPINION

Plaintiff, Jerome E. Gunn, filed a *pro se*, *in forma pauperis* complaint[1] pursuant to 42 U.S.C. § 1983 (DNs 1 and 4). This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the action will be dismissed.

## I. SUMMARY OF CLAIMS

Plaintiff is incarcerated at the Kentucky State Penitentiary. He sues in their individual and official capacities the Kentucky Department of Corrections (KDOC) and Sheila Burnham, Chaplain at KSP. He states that he is a "security check inmate," which he explains means "an inmate who had currently been convicted by the KSP Adjustment Committee of an offense to where he had to check in every thirty minutes to an hour so that KSP staff would be aware of his whereabouts and actions."

His allegations arise from alleged harassment in August 2006 regarding his attempts to attend chapel services. Specifically, he states that on August 18 and 19 he was harassed by Defendant Burnham when he went to the chapel to view the schedule of services. He states that the Chaplain ordered him to leave and told him that he could not view the schedule. He further

---

[1] Shortly after he filed his complaint (DN 1), Plaintiff filed an amended and supplemented complaint (DN 4). The two documents are virtually identical.

alleges that on August 20, 2006, while attending sign-up at the chaplin's office for service for that day, Defendant Burnham intentionally harassed him again by advising him that he would be assigned to a special seat during service because of his status as a security check inmate. Plaintiff alleges that other security check inmates present at the chapel service were not assigned to special seats.

Plaintiff further alleges that he "calmly tried to explain to Defendant Burnham that there were other security check inmates present in the service and they were not assigned special seatings," but Defendant Burnham failed to give him "any answer, further causing him to suffer intentionally inflicted mental aggression, pain, and anger as a result of her actions."

Plaintiff states that he then "calmly" requested permission to go upstairs and get an institutional grievance form to grieve the matter. He states that he was refused and that Defendant Burnham radioed for assistance, "having him wrongfully escorted and removed from chapel services." Plaintiff alleges that he again requested to attend church services and was denied by Defendant Burnham's unwritten policy that, once services begin, an inmate cannot attend services.

Plaintiff alleges that he has a lengthy, well-documented history of, among other things, major depression (recurrent type), bipolar mood disorder, oppositional defiant disorder as a child, conduct disorder, dysthmia, limited intelligence, and possible attention deficit disorder. In Count I of his complaint and amended complaint, Plaintiff claims that Defendant KDOC violated his rights under the following provisions of law: the Equal Protection Clause; the Free Exercise Clause of the First Amendment; the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a)(1), (2) and (b)(1); and the Americans with Disabilities

Act (ADA), 42 U.S.C. § 12101 et seq. In Count II, Plaintiff alleges a violation of 29 U.S.C. § 794 "where they receive Federal financial funds for such services." In Count III, Plaintiff alleges that Defendant Burnham violated his rights under the Equal Protection Clause, the Free Exercise Clause of the First Amendment, the RLUIPA, and the ADA.

As relief, Plaintiff wants punitive damages for psychological harm of $50,000, general damages of $25,000, and injunctive relief in the form of protecting plaintiff from harassment or retaliation from defendants.

Attached to his amended and supplemented complaint are, among other things, a memo from Patti Treat, Program Director/Grievance Coordinator, dated April 24, 2007, in which Ms. Treat informs Plaintiff that per his request she is assigning an inmate legal aide; a grievance (#07-05-012-R) on a KDOC grievance form dated May 17, 2007,[2] regarding his treatment on August 20, 2006, by Defendant Burnham; and a letter dated May 21, 2007, from Plaintiff to Commissioner John Rees stating that he was appealing Warden Simpson's response to grievance (#07-05-012-R). That letter asks for an order directing Warden Simpson to process the grievance which was rejected for being untimely. Also attached is a May 24, 2007, memo from Warden Simpson to Plaintiff, stating that he was in receipt of the letter regarding grievance (#07-05-012-R) and that, after reviewing the complaint and actions taken by Program Director Patti Treat, he concurred with her decision to reject the complaint in accordance with CPP 14.6 section H-1a(2). A June 6, 2007, letter from John Rees to Plaintiff stated that he was in receipt of the letter concerning rejection of grievance (#07-05-012-R). That letter further states:

---

[2] In his complaint, part of which is on a court-supplied form, Plaintiff states that he filed his grievance on May 17, 2007, and that it was finally denied by the Commissioner on June 6, 2007.

3

"According to information received at this office you did not file the grievance in accordance with CPP 14.6. This policy specifically states you must file a grievance within 5 working days from a specific incident. You failed to do so. Therefore, the grievance coordinator was correct in rejection [sic] you grievance."

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, ___, 127 S. Ct. 1955, 1974 (2007).

Pursuant to the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Booth v. Churner,* 532 U.S. 731, 741 (2001).

The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 2387 (2006), that the PLRA exhaustion requirement requires "proper exhaustion." "Proper exhaustion" means that the plaintiff complied with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances. *Id.* at 2386-88. It is a precondition to any suit challenging prison conditions. *Id.* Therefore, following *Woodford*, if a plaintiff's grievance was not filed in a timely manner pursuant to the state's administrative rules, the plaintiff has not properly exhausted his administrative remedies, and the claim is barred.

In *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 921 (2007), the Court concluded that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." Thus, as an affirmative defense, exhaustion must normally be pled and proven by the defendant. Accordingly, the Court held that it was error for district courts to dismiss complaints at the initial screening stage on the basis that the prisoner did not plead and prove exhaustion. The Supreme Court did not, however, completely foreclose a district court's ability to dismiss for failure to exhaust on initial review. Additionally, the Supreme Court's recent decision in *Jones*, 127 S. Ct. at 922, did not modify *Woodford*'s holding regarding "proper exhaustion." To the contrary, the Court drew upon the reasoning of *Woodford* when it struck down the Sixth Circuit's rule barring prisoners from bringing suit against any defendant whom a Michigan prisoner had not named in a Step I administrative grievance:

> In *Woodford*, we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," 548 U.S., at ___, 126 S. Ct. 2378 (slip op., at 5)-rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that

5

> is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. As the MDOC's procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted.

*Jones*, 127 S. Ct. at 922-23.

Several district courts have held that under *Jones v. Bock*, even though exhaustion of administrative remedies need not be pled specifically in the complaint, *sua sponte* dismissal for failure to state a claim upon which relief may be granted is appropriate on initial review where it is apparent from the face of the complaint that an inmate has failed to exhaust the prison grievance procedure. *See Thornton v. Rios*, No. 07-CV-194-GFVT, 2007 WL 4365415, at *5 (E.D. Ky. Dec. 12, 2007) (see also cases cited therein).

Here, it is clear from the face of the complaint and the attachments thereto that Plaintiff waited over eight months to file a grievance about the events which occurred in August 2006; that KDOC refused to process that grievance because it was untimely; and that KDOC considered but rejected his request to consider the grievance even though it was untimely. Because Plaintiff did not timely file a grievance, he did not properly exhaust. This fact is clear on the face of the complaint and warrants dismissal of the complaint in the first instance for failure to state a claim.

## III. CONCLUSION

Consequently, the Court will dismiss Plaintiff's claims without prejudice.

Date:

cc: Plaintiff, *pro se*
    Defendants
    General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.009