UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

JEROME E. GUNN                                                                                    PLAINTIFF

v.                                                                          CIVIL ACTION NO. 5:07CV-P103-R

KENTUCKY DEPARTMENT OF CORRECTIONS                                  DEFENDANTS
SHEILA BURNHAM

**MEMORANDUM OPINION**

Plaintiff, Jerome E. Gunn, filed a *pro se*, *in forma pauperis* civil-rights complaint[1] (DNs 1 and 4). This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the action will be dismissed.

**I. SUMMARY OF CLAIMS**

At the time pertinent to the complaint, Plaintiff was incarcerated at the Kentucky State Penitentiary (KSP). He sues the Kentucky Department of Corrections (KDOC) and Sheila Burnham, Chaplain at KSP, in her individual and official capacities. He states that he is a "security check inmate," which he explains means "an inmate who had currently been convicted by the KSP Adjustment Committee of an offense to where he had to check in every thirty minutes to an hour so that KSP staff would be aware of his whereabouts and actions."

His allegations arise from alleged harassment in August 2006 regarding his attempts to attend chapel services. Specifically, he states that on August 18 and 19 he was harassed by Defendant Burnham when he went to the chapel to view the schedule of services. He states that the Chaplain ordered him to leave and told him that he could not view the schedule. He further

---

[1] Shortly after he filed his complaint (DN 1), Plaintiff filed an amended and supplemented complaint (DN 4). The two documents are virtually identical.

alleges that on August 20, 2006, while attending sign-up at the chaplin's office for service for that day, Defendant Burnham intentionally harassed him again by advising him that he would be assigned to a special seat during service because of his status as a security check inmate. Plaintiff alleges that other security check inmates present at the chapel service were not assigned to special seats.

Plaintiff further alleges that he "calmly tried to explain to Defendant Burnham that there were other security check inmates present in the service and they were not assigned special seatings," but Defendant Burnham failed to give him "any answer, further causing him to suffer intentionally inflicted mental aggression, pain, and anger as a result of her actions."

Plaintiff states that he then "calmly" requested permission to go upstairs and get an institutional grievance form to grieve the matter. He states that he was refused and that Defendant Burnham radioed for assistance, "having him wrongfully escorted and removed from chapel services." Plaintiff alleges that he again requested to attend church services and was denied by Defendant Burnham's unwritten policy that, once services begin, an inmate cannot attend services.

Plaintiff alleges that he has a lengthy, well-documented history of, among other things, major depression (recurrent type), bipolar mood disorder, oppositional defiant disorder as a child, conduct disorder, dysthmia, limited intelligence, and possible attention deficit disorder. In Count I of his complaint and amended complaint, Plaintiff claims that Defendant KDOC violated his rights under the following provisions of law: the Equal Protection Clause; the Free Exercise Clause of the First Amendment; the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a)(1), (2) and (b)(1); and the Americans with Disabilities Act

2

(ADA), 42 U.S.C. § 12101 *et seq*. In Count II, Plaintiff alleges a violation of 29 U.S.C. § 794 "where they receive Federal financial funds for such services." In Count III, Plaintiff alleges that Defendant Burnham violated his rights under the Equal Protection Clause, the Free Exercise Clause of the First Amendment, the RLUIPA, and the ADA.

As relief, Plaintiff wants punitive damages for psychological harm of $50,000, general damages of $25,000, and injunctive relief in the form of protecting Plaintiff from harassment or retaliation from Defendants.

The Court conducted its preliminary review and initially dismissed the complaint for failure to exhaust administrative remedies. Plaintiff appealed. The Sixth Circuit Court of Appeals held that it was error to conclude that the complaint itself made clear that Plaintiff failed to exhaust his administrative remedies and remanded for further proceedings.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**A.      Claims against KDOC and Defendant Burnham in her official capacity**

The Court lacks subject matter jurisdiction over Plaintiff's claims against the KDOC, a state agency, under 42 U.S.C. § 1983 and the RLUIPA, by operation of the Eleventh Amendment to the U.S. Constitution. That amendment specifically prohibits federal courts from entertaining suits brought directly against the states or its agencies. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 687-88 (1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court." (internal quotation marks and citation omitted)); *Daleure v. Kentucky*, 119 F. Supp. 2d 683, 687 (W.D. Ky. 2000) ("The Eleventh Amendment protects the Kentucky state government and the Kentucky Department of Corrections from suit."). The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the Eleventh Amendment does not address the situation where a state's own citizen initiates suit against it, case law has interpreted the amendment in such a way as to foreclose that possibility. *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). The Sixth Circuit has opined that "[a] state is sovereign within the structure of the federal system, and 'it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" *Id.* (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)).

There are essentially three exceptions to the rule cited above: (1) when the state consents to suit; (2) when Congress has abrogated a state's sovereign immunity; and (3) when under the

4

fiction created by *Ex Parte Young,* 209 U.S. 123 (1908), a litigant seeks injunctive or prospective relief from a state officer in order to prevent future constitutional violations. *See Barton,* 293 F.3d at 948. None of these exceptions exist in this case.

Because Plaintiff's claims against KDOC under § 1983 and the RLUIPA are against the Commonwealth of Kentucky and, therefore, are barred by the Eleventh Amendment, the Court will dismiss them under FED. R. CIV. P. 12(b)(1) and 12(h)(3).[2]

Plaintiff's official-capacity claims against Defendant Burnham are deemed claims against the Commonwealth of Kentucky itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Therefore, his claims against Defendant Burnham in her official capacity for monetary damages under §1983 and RLUIPA fail for the same reasons as stated above. His claim for injunctive relief would be cognizable under *Ex Parte Young*; however, since filing his complaint he has been transferred to another institution. Therefore, his requests for injunctive relief are moot because he is no longer incarcerated at KSP. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

**B.     ADA and Rehabilitation Act Claim**

The complaint alleges that Defendants violated the ADA because Plaintiff is mentally disabled. Plaintiff also alleges that Defendant Burnham's ejecting him from the chapel worship service violated 29 U.S.C. § 794 "where they receive Federal financial funds for such services." Section 794 is part of the Rehabilitation Act, which does apply to inmates in state prisons. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

---

[2] The ADA and Rehabilitation Act claims against the State are not barred by the Eleventh Amendment. *See United States v. Georgia*, 546 U.S. 151, 159 (2006). They will be considered below.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The Supreme Court has held that the term "public entity" includes state prisons. *See Yeskey*, 524 U.S. at 210.

To make out a claim under the ADA, plaintiff must allege that: (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, and (3) such exclusion, denial of benefits, or discrimination was because of a disability. 42 U.S.C. § 12132. The Rehabilitation Act contains language similar to the ADA. *Jones v. Martin*, No. 99-1255, 2000 WL 191807, at *1 (6th Cir. Feb. 7, 2000).

Plaintiff does not allege that he was denied the ability to attend chapel because of any of his listed disabilities. The Court will, therefore, dismiss this claim. *See id.* (affirming dismissal of ADA claim where plaintiff failed to allege that defendants discriminated against him because of disability). Plaintiff's Rehabilitation Act claim also will be dismissed because Plaintiff did not "clearly allege that the defendants were motivated to discriminate against him solely because of his disability." *Id.* (citing *Sandison v. Mich. High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030, 1036 (6th Cir. 1995)).

## C. Individual-capacity claims against Defendant Burnham

*Equal Protection Clause Claim*

The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. To sustain an equal-protection claim, Plaintiff must allege, in part, that Defendant Burnham intentionally discriminated against him because he was a member of a protected class, *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1424 (6th Cir. 1996), or that he was treated differently than similarly situated individuals and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

Plaintiff has not alleged that the alleged wrongful conduct was intentionally taken against him because of his membership in a protected class, and, in fact, inmates are not a suspect class. *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005); *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998). He does allege that he was required by Defendant Burnham to sit in an assigned seat in chapel whereas other security check inmates were not. However, he does not allege any harm from having to sit in an assigned seat. Such an isolated, *de minimus* inconvenience does not support a constitutional claim. *Cf. Taylor v. City of Falmouth*, 187 F. App'x 596, 601 (6th Cir. 2006) (per curiam) (holding that an isolated, insensitive remark is insufficient to support violation of Equal Protection Clause); *Jackson v. Leutzow*, No. 2:05-cv-188, 2006 WL 3751168, at *5 (W.D. Mich. Dec. 18, 2006) (same); *Spurlock v. Simmons*, 88 F. Supp. 2d 1189, 1194 (D. Kan. 2000) ("Even assuming that plaintiff's communications with [prison] employees were not exactly equal to those of other inmates, the record shows that any communications problems

7

were de minimis and do not rise to the level of a constitutional violation."). This claim will be dismissed.

*Free Exercise Clause Claim*

Plaintiff's claim relating to his alleged inability to exercise freely his right to worship is that Defendant Burnham radioed for assistance and had him escorted from the chapel service after he requested permission to go upstairs and get an institutional grievance form and that when he requested to attend church services he was denied on the basis that, once services begin, an inmate cannot attend services.

Because prison officials have a legitimate interest in maintaining order and security in a difficult institutional environment, prisoners possess constitutional rights that are "more limited in scope than the constitutional rights held by the individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). Inmates do retain their rights under the First Amendment. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). The First Amendment prevents the government from prohibiting or excessively curtailing the free exercise of religion. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).

However, the isolated incident Plaintiff describes in the complaint is not sufficient to implicate the Constitution. *See Randall v. McLeod*, No. 95-10106, 1995 WL 581973, at *4 (5th Cir. Sept. 15, 1995) (per curiam) (affirming district court's dismissal of First Amendment claim based on plaintiff not getting a pork-free meal on two occasions); *White v. Glantz*, No. 92-5169, 1993 WL 53098, at *2 (10th Cir. Feb. 25, 1993) (finding that an "isolated occurrence of being given two meals with green beans and bacon" did not violate a Muslim inmate's First Amendment rights); *Cancel v. Mazzuca*, 205 F. Supp. 2d 128, 142 (S.D.N.Y. 2002) (finding that

8

an "isolated denial, such as having to miss a single religious service, does not constitute a substantial burden on a prisoner's right to practice his religion"). Consequently, by separate Order, the Court will dismiss this claim.

*RLUIPA Claim*

Under the RLUIPA,

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. 2000cc-1(a). "The threshold inquiry under RLUIPA is whether the challenged governmental action substantially burdens the exercise of religion. The burden of proving the existence of a substantial interference with a religious exercise rests on the religious adherent." *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007). Although not specifically defined by RLUIPA or the United States Supreme Court, the Sixth Circuit has stated (in the context of a RLUIPA zoning case) that a "substantial burden" places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Tp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007).

Plaintiff has not alleged a substantial burden on his right to freely exercise his religious beliefs. He alleges that he was told that because of his security status he must sit in an assigned seat in the chapel. He does not allege that he was not allowed to go to chapel because of his security status. He also alleges that, on one occasion, after he was escorted from the chapel he

9

was not allowed to return because services had already begun.  Such an isolated occurrence does not substantially burden Plaintiff's ability to exercise his religion.  *See Greenberg v. Hill*, Civil Action No. 2:07-CV-1076, 2009 WL 890521, at *6 (S.D. Ohio Mar. 31, 2009) ("[I]solated or sporadic government action or omission is *de minimis* and does not constitute a 'substantial burden.'"); *Marr v. Case*, No. 1:07-cv-823, 2008 WL 191326, at *5 (W.D. Mich. Jan. 18, 2008) ("The one time deprivation of a kosher eating utensil does not amount to a substantial burden of Plaintiff's ability to exercise his religion.").  This claim will be dismissed for failure to state a claim.

### III. CONCLUSION

By separate Order, the Court will dismiss Plaintiff's claims.

Date:


cc:     Plaintiff, *pro se*
        Defendants
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.009